**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

CATHY SWIFT,
     ADMINISTRATOR FOR THE
     ESTATE OF ALLEN ST. JOHN,

         Plaintiff,

                                     **Case No. C2-02-682**
   vs.                             **Judge Edmund A. Sargus, Jr.**
                                     **Magistrate Judge Terence P. Kemp**

DAVID HICKEY,
    SHERIFF,
       et al.,

         Defendants.

## OPINION AND ORDER

This matter is now before the Court for consideration of the status of Plaintiff's state law claims following remand by the Court of Appeals. Further, if the Court determines that such state law claims are properly at issue, Defendants seek summary judgment as to each. The Court also addresses Plaintiff's request for a default against the Defendants.

On appeal, the Sixth Circuit Court of Appeals found that genuine issues of material fact remain for the jury on the Section 1983 claim regarding whether Defendants had probable cause to arrest Plaintiff and whether Defendants used excessive force in attempting to place him in the back seat of a police cruiser. The Court of Appeals affirmed the judgment of this Court on Plaintiff's official capacity claims insofar as Plaintiff failed to produce any evidence tending to prove that Defendants Sheriff David Hickey and Vinton County failed to train their officers in a manner that constituted deliberate indifference to citizens' constitutional rights. The Court of Appeals did not

address any matters relating to Plaintiff's state law claims because Plaintiff did not appeal the propriety of the dismissal of them.

Specifically, upon entering summary judgment on Plaintiff's sole federal claim under Section 1983, the Court declined to exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367(c)(3) and *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Consequently, the Court dismissed without prejudice Plaintiff's state law claims without commenting upon the merits.

The parties now dispute the status of Plaintiff's state law claims. Defendants argue that Plaintiff did not appeal the dismissal of the state law claims and has not otherwise attempted to reactivate them since the time of the Court of Appeals' remand. Plaintiff, on the other hand, argues that his Amended Complaint, which contained all of the state law claims, was reinstated upon the remand.

The Court concludes that, in light of the Court of Appeals' disposition of Plaintiff's federal claim, the decision whether to exercise supplemental jurisdiction over the previously-dismissed state law claims clearly deserves reconsideration. In this case, the Court's decision to dismiss the state claims without prejudice complied with the presumption against retaining supplemental jurisdiction when all federal claims are dismissed before trial. The decision whether to exercise or decline supplemental jurisdiction was, however, in the first instance, discretionary. 28 U.S.C. § 1367(c); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

In this case, judicial economy, convenience and fairness to the litigants justify the exercise of supplemental jurisdiction. In terms of judicial efficiency and convenience, this case is nearing

resolution through trial by jury. Judicial economy dictates that all of Plaintiff's claims against these Defendants be tried together. In terms of fairness to the parties, the Court notes that both Plaintiff and Defendants have conducted all of the necessary discovery to proceed on the state law claims together with the federal Section 1983 claim. The facts that support Plaintiff's state law claims arise from the same set of events and conduct that relate to the federal claim. Accordingly, the Court reconsiders its decision to dismiss the state law claims and will permit Plaintiff to reinstate them.

This determination, however, does not end the matter. Defendants previously filed a Motion seeking summary judgment on Plaintiff's state law claims. The Court has allowed the parties to supplement their briefs as they relate to Plaintiff's claims of false arrest, false imprisonment, malicious prosecution and negligence. The Court turns now to address Defendants' Motion for Summary Judgment as to these state law causes of action.

## I.

The history of this case has been fully summarized by the Court's previous Opinion and Order of November 20, 2003 and the Court of Appeals' decision of June 20, 2005.[1] The facts, therefore, will not be reproduced here. Instead, the Court will provide the facts as necessary to place the issues raised by Defendants' Motion for Summary Judgment in context.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

---

[1] The Court notes that, since the initial entry of judgment and decision by the Court of Appeals, Plaintiff, Allen St. John, passed away. The Administrator of his estate, Cathy Swift, has been substituted as the proper Plaintiff.

P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III.

**A.     Immunity**

Plaintiff asserts state law claims of false arrest, false imprisonment, malicious prosecution and negligence.  Defendants maintain that they are entitled to statutory immunity under the Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code §§ 2744.02-2744.03.

**1.     Official Capacity Claims Against Defendants**

As for the state law claims against the Vinton County officials in their official capacities, Defendants assert the defense of statutory immunity.[2]  Ohio Rev. Code § 2774.02 provides as follows:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2774.02(A)(1).[3]  The Act sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. *See Cater v. City of Cleveland*, 83 Ohio St.3d 24, 697 N.E.2d 610, 615 (1998). First, under its very terms, Section 2744.02(A) sets forth the general

---

[2]     Plaintiff's state law claims against the officers that were filed against them in their official capacities are the equivalent of claims brought against Vinton County. *Hiles v. Franklin County Bd. of Comm'rs*, 2005 WL 3557454 *9 (Ohio App. 10th Dist. Dec. 30, 2005)(slip op.).

[3]     Although the parties have not raised the issue, the Court notes that Section 2744.02 has been challenged under the Ohio Constitution. *See Kammeyer v. City of Sharonville*, 311 F. Supp.2d 653 (S.D. Ohio 2003); *Owensby v. City of Cincinnati*, 385 F. Supp.2d 626 (S.D. Ohio 2004). At least two other judges in this district have acknowledged that these decisions call into doubt the constitutionality of the immunity statute. *Sample v. Logan County*, 2006 WL 39265 (S.D. Ohio, Jan. 6, 2006)(Slip Op.)(Smith, J.); and *Armstrong v. U.S. Bank*, 2005 WL 1705023 (S.D.Ohio July 20, 2005)(Dlott, J.). These judges, however, have declined to follow *Kammeyer* and instead opted to follow the Ohio decisions that continue to apply Section 2744.02. In light of a clear split of authority within this district and the state courts, and without a binding Circuit or Ohio Supreme Court decision, the Court will follow the recent *Armstrong* and *Sample* decisions that apply the immunity statute.

presumption of immunity. Under the second tier, the immunity afforded a political subdivision is subject to five exceptions listed in Section 2744.02(B). *Cater*, 697 N.E.2d at 615. Finally, under the third tier of analysis, immunity may be reinstated if the political subdivision successfully argues that one of the defenses contained in Section 2744.03 applies. *Id.*

Section 27744.02(B) provides the following five exceptions to immunity in which a political subdivision or any of its employees may be liable: (1) damage caused by the negligent operation of a motor vehicle; (2) damage caused by negligent acts of a political subdivision's employees with respect to its proprietary functions; (3) damage cause by failure to keep roads in repair or from failure to remove obstructions from public roads; (4) damage or injury caused on the grounds of buildings used in connection with the performance of a governmental function, but not including jails; and (5) where civil liability is expressly imposed upon a political subdivision by the Revised Code. *See* Ohio Rev. Code § 2744.02(B).

None of these five exceptions to the general rule of political subdivision immunity applies to the facts presented in this case. Indeed, Plaintiff does not appear to argue that Defendants acting in their official capacities have been divested of their statutory immunity, and the record similarly cannot support a finding for an exception against the general presumption. Accordingly, the Motion for Summary Judgment is granted as to Defendants acting in their official capacities.

### 2.      Individual Capacity Claims Against Defendants

Defendants Hickey, Boyer and Wolfe also assert that they are immune in their individual capacities. An employee of a political subdivision is immune from civil liability unless the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b); *see also Cook v. Cincinnati*, 103 Ohio App.3d 80,

-6-

90, 658 N.E.2d 814 (1995). Plaintiff relies on this exception for immunity and contends that the Sheriff and Deputies acted with malice, in bad faith or, at least, in a reckless manner.

When analyzing claims for immunity under Ohio Rev. Code § 2744.03(A)(6), Ohio courts have held that, "reckless" refers to conduct that causes an unreasonable risk of harm and is "substantially greater than that which is necessary to make his conduct negligent . . . ." The term "malice" means the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002) (citing *Fabrey v. McDonald Village Police Dep't*, 70 Ohio St.3d 351, 639 N.E.2d 31, 35 (Ohio 1994)).

Plaintiff contends that, following the November 9, 2000 arrest, St. John and his family fled Vinton County in fear and moved in with St. John's mother until March 13, 2001 when the state court dismissed the two disorderly conduct charges after a bench trial. Further, Plaintiff alleges that, prior to the arrest, Defendants filed several criminal misdemeanor charges against St. John arising out of complaints lodged by his neighbors, the McManuses, and at least one criminal charge regarding the position of the security lights, without conducting any investigation. Plaintiff contends that Defendants filed the second criminal charge regarding the security lights, the one at issue in this case that resulted in St. John's arrest, while the first was still pending.

The record contains evidence that, on the night of his arrest, St. John told the officers that he would not fit in the back seat of the police cruiser; he informed the officers that, because of his disability, his legs would not bend. St. John averred that the officers paid no attention and that two officers "continued to push with force to have [his body] and [his] legs inside the cruiser." St. John stated in his affidavit that the police "pushed, moved, turned, and twisted" him and his legs in their

-7-

attempts to maneuver him into the back seat. (St. John Aff. ¶ 14.) He contends that his leg was caught between the police cruiser and its back door, causing injury. In addition, it is undisputed that after the officers stopped trying to situate St. John in the back seat of the police cruiser, they attempted to return him to his wheelchair and dropped him twice in the process.

Determining whether a defendant engaged in reckless or malicious conduct is generally a question of fact for the jury. *See Fabrey,* 639 N.E.2d at 35; *Hiles,* 2005 WL 3557454 at *10. Viewing the record before the Court in a light most favorable to Plaintiff, assuming the truth of Plaintiff's testimony, a jury could conclude that officers acted at least recklessly, such that genuine issues of material fact remain as to whether the Defendants are entitled to immunity under Ohio Rev. Code § 2744.03.[4]

Accordingly, Defendants' Motion for Summary Judgment as to their assertion of statutory immunity is denied.

**B.    Probable Cause**

Defendants also assert that they are entitled summary judgment as to the state claims of false arrest, false imprisonment and malicious prosecution because Plaintiff cannot demonstrate a necessary element of the causes of action.

To prevail on the malicious prosecution claim, Plaintiff must establish "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause and (3) termination of the

---

[4]        The Court notes that Plaintiff's evidence of the Defendants' activities does not rise to the extreme level of wanton conduct. Wanton conduct has been characterized as the failure to exercise any care whatsoever. *Peoples v. Willoughby,* 70 Ohio App.3d 848, 851, 592 N.E.2d 901 (Ohio Ct. App. 1990)("entire absence of all care for the safety of others and an indifference to consequences"). The Court will consider, at either Plaintiff or Defendants' request, submitting an interrogatory to the jury regarding the Defendants' standard of care.

-8-

prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, Syl., 559 N.E.2d 732, 735 (1990). The lack of probable cause generally becomes the essence of a claim for malicious prosecution in that malice may be inferred if probable cause was not present. *See, e.g., Huber v. O'Neill*, 66 Ohio St.2d 28, 419 N.E.2d 10 (Ohio 1981). An action for malicious prosecution is "closely akin" to an action for false arrest or false imprisonment. *Rogers v. Barbera*, 170 Ohio St. 241, 243, 164 N.E.2d 162 (Ohio 1960). Under Ohio law, claims for false arrest and false imprisonment require proof of the same essential elements. *Id.* (quoting 22 American Jurisprudence, 353, False Imprisonment, Section 2-3); *see also Evans v. Smith*, 97 Ohio App.3d 59, 70, 646 N.E.2d 217 (Ohio Ct. App. 1994). Specifically, each claim requires the plaintiff to show that a detention occurred without lawful justification. *Id.*

Defendants assert that Plaintiff cannot prove that the police officers lacked probable cause for St. John's arrest. Similarly, Defendants maintain that they had a reasonable justification for his detention, thereby negating Plaintiff's claims of false arrest and false imprisonment fail.[5]

On appeal of this Court's determination to the contrary, the Court of Appeals for the Sixth Circuit clearly held that the fact issues relating to the existence of probable cause remain in dispute and that entry of summary judgment on this issue was error. Although the holding was limited to claims under Section 1983, the same reasoning applies to the state claims. The Court is bound by

---

[5] Defendants offer the deposition testimony of Vinton County Prosecuting Attorney Gleeson, who opines that reasonable grounds for St. John's arrest were present and that he told the officers that probable cause existed before they took St. John into custody. Plaintiff opposes the admission of Gleeson's testimony inasmuch as it attempts to provide an expert opinion and because Plaintiff had no had access to the transcript before it was filed in support of Defendants' supplemental memorandum. Because the issue of probable cause remains in dispute regardless of whether the deposition is considered, the Court need not address Plaintiff's objections to Gleeson's testimony at this juncture.

that determination. Defendants' Motion is therefore denied to the extent that they seek summary judgment on the issue of probable cause or a reasonable justification for St. John's detention.

**C.     Statute of Limitations**

Defendants assert for the first time in their supplemental brief that the applicable statute of limitations bars Plaintiff's claims of false arrest/false imprisonment and malicious prosecution. Defendants did not raise the defense of statute of limitations in their original Answer to Plaintiff's Complaint. Moreover, on January 6, 2003, the Court granted Plaintiff's motion for leave and directed the Clerk to file Plaintiff's Amended Complaint that same day. The Court further ordered Defendants to file their Answer to the Amended Complaint within ten (10) days of the date of the Order granting leave. Defendants failed to do so, and, to date, have not filed an Answer to the Amended Complaint.

Plaintiff apparently recently noticed Defendants' mistake in this regard. Hence, Plaintiff filed a Motion for Entry of Default on January 24, 2006. The Motion, however, primarily argues waiver and obviously represents Plaintiff's effort to bar Defendants from asserting the statute of limitations defense rather than a serious attempt to obtain a default against Defendants. To be sure, "[t]rials on the merits are favored in the federal courts," and a court's refusal to relieve a party of default is a harsh sanction, indeed. *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990) (quoting *United Coin Meter v. Seaboard Coastline Railroad*, 705 F.2d 839, 846 (6th Cir. 1983)). In this case, the Court declines to go forward with a default because it "is a drastic step which should be resorted to only in the most extreme cases." *United Coin*, 705 F.2d at 845. On that basis, Plaintiff's Motion for Entry of Default is denied.

-10-

The Court concludes, however, that Defendants have waived the defense of statute of limitations. This litigation began in June, 2002. After more than three and one-half years, the Defendants first raised the defense of statute of limitations in their supplemental memorandum supporting summary judgment. Although the Court permitted the parties to file such supplemental briefs on Plaintiff's state law claims, that Order cannot be interpreted as a permission slip to assert new defenses on the eve of trial.

Federal Rule of Civil Procedure 8(b) provides that "[a] party shall state in short and plain terms the party's defenses to each claim asserted . . . ." As to affirmative defenses, Rule 8(c) requires that "a party shall set forth affirmatively . . . statute of limitations . . . , waiver, and any other matter constituting an avoidance or affirmative defense." A failure to plead an affirmative defense as required by Rule 8(c) results in the waiver of that defense and its exclusion from the case. *Haskell v. Washington Township*, 864 F.2d 1266, 1273 (6th Cir. 1988)(noting "interests of justice" required finding that defendant waived statute of limitation after passage of more than three years of extensive litigation in civil rights action); *see also Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976). Further, the Court finds that Plaintiff would be prejudiced if Defendants were permitted to plead a statute of limitations defense at this late stage of the proceedings, as discovery is now closed, and the case is scheduled for trial in less than two weeks.

## IV.

For the foregoing reasons, Defendants' Motion for Summary Judgment on Plaintiff's state law claims is **GRANTED** with respect to Defendants in their official capacities but **DENIED** with respect to Defendants in their individual capacities. Plaintiff's Motion for Entry of Default is **DENIED**.

-11-

**IT IS SO ORDERED.**

2-7-2006
_____          _____
**DATED**                          **EDMUND A. SARGUS, JR.**
                                   **UNITED STATES DISTRICT JUDGE**

-12-